UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DEE FRYE, *et al.*,            )
                               )
    Plaintiffs,                )
                               )
    vs.                        )  Case No. 3:13-CV-113
                               )
AUTO-OWNERS INSURANCE          )
CO., *et al.*,                 )
                               )
    Defendants.                )

### OPINION AND ORDER

This matter is before the Court on the: (1) Motion for Summary Judgment, filed by Defendant, Nationwide Mutual Insurance Company, on August 16, 2013 (DE #32); (2) Plaintiff's Motion for Extension of Time to File Response to the "Bad Faith" Portion of Defendant Nationwide Mutual Insurance Co.'s Motion for Summary Judgment, filed by Plaintiffs, Dee Frye and Lanhui Frye, on October 11, 2013 (DE #47); (3) Motion for Partial Summary Judgment Against Defendants, filed by Plaintiffs, Dee Frye and Lanhui Frye, on October 11, 2013 (DE #48); and (4) Plaintiff's Alternative Motion for Partial Summary Judgment, filed by Plaintiffs, Dee Frye and Lanhui Frye, on October 11, 2013 (DE #50). For the reasons set forth below, the Motion for Summary Judgment (DE #32) is **DENIED WITHOUT PREJUDICE AND WITH LEAVE TO REFILE** within thirty (30) days of the date of this order, the Motion for Extension of Time (DE #47) is **GRANTED in part and DENIED in part** as described in detail

below, and the Motion for Partial Summary Judgment and the Alternative Motion for Partial Summary Judgment (DE's #48 & #50) **REMAIN PENDING.**

BACKGROUND

On January 7, 2013, Dee Frye and Lanhui Frye (collectively, "Plaintiffs"), filed a complaint against Auto-Owners Insurance Company ("Auto-Owners") and Nationwide Mutual Insurance Co. ("Nationwide") in the St. Joseph County Circuit Court of the state of Indiana. (DE #1-1.) On February 8, 2013, Nationwide removed the action to federal court.[1] (DE #1.) Both Auto-Owners and Nationwide answered the complaint. (DE's #12 & #13.) On August 16, 2013, Nationwide filed the instant motion for summary judgment. (DE #32.) After several requests for extension of time were granted, Plaintiffs filed their response on October 11, 2013. (DE #45.) That same day, they also filed the instant motion for extension of time to respond to the bad faith portion of Nationwide's motion for summary judgment, the instant motion for partial summary judgment against all defendants, and the instant motion for partial summary judgment in the alternative. (DE's #47, #48, #50.) On October 16, 2013, Auto-Owners responded to Nationwide's motion for summary judgment. (DE #52.) Nationwide

---

[1] The case was transferred to this Court from the Southern District of Indiana on February 20, 2013. (DE #8.) Auto-Owners consented to the removal. (DE #10.)

2

lodged an objection to Plaintiffs' motion for extension of time to respond to the bad faith claims on November 1, 2013, and filed a reply in support of their motion for summary judgment and a response in opposition to Plaintiffs' motion for partial summary judgment on November 8, 2013. (DE's #56, #59, 60.) Plaintiffs filed a response to Nationwide's objection regarding the motion for extension of time on that same day. (DE #61.) Auto-Owners responded to Plaintiffs' motions for partial summary judgment on November 8, 2013, as well. (DE #62.) On November 22, 2013, Plaintiffs filed an agreed motion for modification of the Court's scheduling order which indicated that the parties had been diligently moving the case forward and proceeding with discovery. (DE #65.) The parties requested extensions for expert disclosure deadlines as well as an extension of the discovery deadline. (*Id*.) Magistrate Judge Christopher A. Nuechterlein granted that motion on November 25, 2013, and the discovery deadline was moved from March 13, 2014, to June 14, 2014. (DE #66.)

DISCUSSION

Plaintiff, Dee Frye, was involved in a car accident on January 27, 2011, in which he was seriously injured. (Comp., ¶¶ 7-9; Aff. of D. Frye, ¶¶ 7-9.) The accident was caused by the negligence of Myron Dampier ("Dampier"), the driver of the other vehicle. (Aff. of D. Frye, ¶ 6.) As a result of the accident, Dee Frye incurred

3

medical bills in excess of $500,000 and has lost wages in excess of $100,000. (*Id.* at ¶ 8.)

At the time of the accident, Dee Frye was driving a vehicle, owned by Arthur and Mary Webber, that was insured under Nationwide's automobile insurance policy number 91 13 769036 ("Nationwide Policy"). (Comp., ¶ 5; Aff. of D. Frye, ¶ 10; Nationwide Policy, DE #33-2, p. 47.) The accident occurred while he was driving that vehicle in the scope of his employment with Tri City Data & Electronic , Inc. ("Tri City"). (Aff. of D. Frye, ¶ 10.) Through Tri City, Dee Frye was covered by a commercial automobile insurance policy which was issued by Auto-Owners ("Auto-Owners Policy"). (Comp., ¶ 4; Auto-Owners Policy, DE #46-3.) Tri City also provided a commercial umbrella insurance policy that extended the limits of coverage to Dee Frye ("Auto-Owners Umbrella Policy"). (Comp. ¶ 4; Auto-Owners Umbrella Policy, DE #46-4.) Both the Auto-Owners Policy and the Nationwide Policy provided under-insured motorist ("UIM") coverage provisions. (Auto-Owners Policy, DE #46-4, p. 6; Nationwide Policy, DE #33-2, p. 48.)

Farmers Insurance ("Farmers"), the liability carrier for Dampier, made an offer of the applicable policy limits in the amount of $100,000 to Plaintiffs, and the amount tendered was accepted. (Comp., ¶ 10; see also DE #46-6, pp. 1.) Prior to and following the acceptance, counsel for Plaintiffs corresponded extensively with Nationwide and Auto-Owners regarding Plaintiffs'

4

position on the application and availability of UIM coverage under the two policies. (DE's #46-6 through #46-17.) In early written communications to Nationwide, Plaintiffs stressed their belief that Auto-Owners and Nationwide would be responsible for sharing the first $1,100,000.00 of coverage on a pro rata basis. (DE #46-6.) They reiterated that position in several subsequent letters. (DE's #46-8 & #46-10.) When Nationwide responded via letter, they stated that their review had determined that no underinsured motorist coverage was available to Plaintiffs "because our limits match those of the tort-feasor carrier." (DE #46-12.) No mention was made of pro rata sharing. (*Id*.) Although Plaintiffs continued to send correspondence regarding their belief that the Nationwide Policy provided for pro rata sharing of claim exposure (DE's #46-13 & #46-14), Nationwide did not communicate further as to its own position. Ultimately, because no agreement could be reached between Plaintiffs and Nationwide or Auto-Owners, Plaintiffs resorted to filing the instant complaint alleging that they are entitled to recover UIM coverage from each of the Defendants for all damages resulting from the car accident, up to the limits of coverage, and also that Nationwide and Auto-Owners breached their duties of good faith by failing to respond to and/or ignoring Plaintiffs' claims. (Comp., ¶¶ 13, 14, 15.) Plaintiffs further seek a declaration that Auto-Owners does not benefit from any recovery as a Worker's Compensation carrier and that Nationwide

5

must pay on a pro rata basis up to the first one million dollars of damages above the $100,000 already paid out by Farmers. (*Id*. at ¶ 3.)

*Rule 56(d)*

Plaintiffs filed their motion for extension of time to file a response to the "bad faith" portion of Nationwide's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(d). Federal Rule of Civil Procedure 56(d)[2] states that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [of a motion for summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed.R.Civ.P. 56(d). In general, "[s]ummary judgment should not be entered 'until the party opposing the motion has had a fair opportunity to conduct such discovery as may be necessary to meet the factual basis for the motion.'" *Chalimoniuk v. Interstate Brands Corp.*, 172 F.Supp.2d 1055, 1057-58 (S.D. Ind. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)). However, in order to prevail, a Rule 56(d) movant

---

[2] Federal Rule of Civil Procedure 56 was amended in 2010. Subsection (d) is substantially the same as the prior subdivision (f). Fed.R.Civ.P. 56 Advisory Committee Notes. While some of the cases cited by the Court refer to Rule 56(f) instead of Rule 56(d), the analysis is consistent.

6

must first make a good faith showing that he cannot present facts essential to justify his opposition to the movant's summary judgment motion. *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1058 n. 5 (7th Cir. 2000). This should be done via an affidavit submitted with the motion "explaining why the additional discovery is necessary." *Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006). The Seventh Circuit has held that lack of diligence in pursuing discovery or unjustified delay tactics are reasons to deny a Rule 56(d) motion. *Kalis*, 231 F.3d at 1058 n. 5.

Here, Plaintiffs' counsel has submitted an affidavit in support of the Rule 56(d) motion. (Aff. of P. Agostino.) In it, he points out that, although Plaintiffs served discovery on Nationwide on August 8, 2013, at the time the motion was filed on October 11, 2013, no responses had been received by Nationwide.[3] (*Id.* at ¶ 6.) He acknowledges that the contractual claims contained within Nationwide's motion for summary judgment need no additional discovery to be argued or considered;[4] however, he asserts there are a number of facts to be uncovered that will further support the denial of the motion for summary judgment in relation to the bad faith claim. (*Id.*) Plaintiffs note that they

---

[3] According to the Rule 56(d) motion, at the time it was filed, Plaintiffs had not "obtain[ed] or review[ed] any written discovery or take[n] any depositions in this case, due to the early time frame in which the summary judgment was filed." (DE #47, p. 3.)

[4] Indeed, Plaintiffs filed a response to the contractual claims for UIM benefits contained within Nationwide's motion for summery judgment on October 11, 2013.

7

intend to seek "claims notes, training policies and procedures for the adjusting of underinsured motorist claims, claims manuals, and specifically training materials and programs provided to adjusters in relation to the operation of pro rata clauses in underinsured motorist claims." (DE #47, p. 3.) They further seek to depose the adjuster(s) who handled Dee Frye's claim. (*Id.*) They point out that bad faith claims often deal heavily with state of mind and intent issues, and they rely heavily on *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 976 (Ind. 2005), to support their position that additional time for discovery is warranted for the bad faith claims. (DE #47, p. 2-5.) For its part, Nationwide objects to Plaintiffs' Rule 56(d) motion, asserting that "[c]overage is the only question at issue in this case" and correctly pointing out that "coverage is a legal question based upon the terms of the underlying insurance contract." (DE #56, p. 2) (emphasis removed) (citing *Terre Haute First Nat'l Bank v. Pacific Employers Ins. Co.*, 634 N.E.2d 136 (Ind. Ct. App. 1993). Plaintiffs have replied by noting that "[t]he issue of bad faith is a separate issue from the issue of coverage." (DE #61, p. 1.)

The Court agrees with Plaintiffs that *Magwerks* is illustrative for purposes of Plaintiffs' Rule 56(d) motion. In *Magwerks*, the Indiana Supreme Court held that a good faith dispute concerning insurance coverage does not automatically preclude a punitive damages claim for bad faith when coverage is denied. *Magwerks*, 829

N.E.2d at 970. The Court reaffirmed that "a good faith dispute concerning insurance coverage cannot provide the basis for a claim in tort that the insurer breached its duty to deal in good faith with its insured" and stated that insurance companies may, of course, dispute claims in good faith. *Id*. at 975 (citations omitted). However, the Court pointed out that "an insurer's duty to deal in good faith with its insured encompasses more than a bad faith coverage claim." *Id*. Citing to *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 519 (Ind. 1993), the Court explained that, while the exact extent of an insurer's duty to deal in good faith has not been precisely defined, some general guidelines apply such that:

> [t]he obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim.

*Id*.

Here, as Plaintiffs' Rule 56(d) and related affidavit set forth, Nationwide filed its summary judgment motion before it provided any discovery to Plaintiffs. It does not appear that Plaintiffs have been dilatory in pursuing discovery in any way prior to or since that time. Plaintiffs have explained why they were not able to present facts essential to justify their opposition to the bad faith portion of Nationwide's motion for

9

summary judgment --- namely that additional time was necessary to discover specific documents in Nationwide's possession such as claims notes, training policies/procedures, and manuals and to conduct depositions of the adjuster(s) responsible for handling Plaintiffs' claim. Finally, while Nationwide argues that coverage is the only question at issue in this case, the Indiana Supreme Court has made it clear that, even where a good faith dispute exists over coverage, an insurer's conduct may otherwise violate its duty of good faith and fair dealing. *Magwerks*, 829 N.E.2d at 976-78. Plaintiffs posit that the additional discovery described above will likely lead to confirmation that Nationwide was willfully ignoring portions of its contract in bad faith in order to deny Plaintiffs' claim or to force them into litigation in order to obtain benefits. Plaintiffs also point out that Nationwide repeatedly ignored Plaintiffs' requests to communicate, denied coverage based on one section of the contract while failing to even mention or discuss the pro rata provision that formed the basis of Plaintiffs' proffered position, and refusing to communicate with its insureds. While the Court obviously has not conducted a review of these claims on the merits at this time, it appears that Plaintiffs are suggesting that their bad faith claims encompass more than the simple denial of coverage. As such, it would be premature to insist that Plaintiffs respond to the bad faith portion of Nationwide's motion for summary judgment without having

had the opportunity to conduct discovery in support of their position.  See *Klepper v. ACE American Ins. Co.*, 999 N.E.2d 86, 98-99 (Ind. Ct. App. 2013) ("an insured who believes that an insurance claim has been wrongly denied may have available two distinct legal theories, one in contract and one in tort, each with separate, although often overlapping, elements, defenses and recoveries.  Given the two distinct theories upon which the [Plaintiff] seeks to recover and their separate elements and defenses, we cannot conclude at this stage of the proceedings that the resolution of the contract dispute necessarily disposes of the tort-based bad faith claim.") (citation omitted).

Thus, while the contractual claims regarding UIM coverage are ripe for adjudication, the Court declines to rule on Nationwide's motion for summary judgment in a piecemeal fashion.  Rather, Nationwide's motion for summary judgment is **DENIED in its entirety** without consideration of the merits and **WITHOUT PREJUDICE**.  As Plaintiffs have indicated that the parties have been diligently moving the case forward and proceeding with discovery (DE #65), and as it has been several months since the instant motions were filed, the Court concludes that Plaintiffs have had sufficient time to gather the discovery materials referenced in their Rule 56(d) motion.  Therefore, to the extent that Plaintiffs request that the Court deny Nationwide's motion for summary judgment and allow Nationwide to renew its motion at an appropriate time, that request

11

is **GRANTED**. However, to the extent that Plaintiffs suggest that the appropriate time for renewal will be after the close of all discovery, that request is **DENIED**. Nationwide is **GRANTED LEAVE TO REFILE** its motion for summary judgment (with or without modifications) within thirty (30) days of the date of this order. Plaintiffs and Auto-Owners are **DIRECTED** to follow the standard summary judgment procedures described in Northern District of Indiana Local Rule 56-1 regarding timing of responses and replies. All parties are **ADVISED** that any new motions, responses, and/or replies filed may not incorporate by reference any previously ruled upon documents but must set forth each motion, response, or reply anew.

CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment (DE #32) is **DENIED WITHOUT PREJUDICE AND WITH LEAVE TO REFILE** within thirty (30) days of the date of this order, the Motion for Extension of Time (DE #47) is **GRANTED in part and DENIED in part** as described in detail above, and the Motion for Partial Summary Judgment and the Alternative Motion for Partial Summary Judgment (DE's #48 & #50) **REMAIN PENDING**.

**DATED: March 31, 2014**              /s/ RUDY LOZANO, Judge
                                       **United States District Court**