# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | |
|---|---|
| DEE FRYE, *et al.*,             ) | |
|                     ) | |
|      Plaintiffs,      ) | |
|                     ) | |
|    vs.                 ) | |
|                     ) | NO. 3:13–CV–113 |
| AUTO-OWNERS INSURANCE   ) | |
| CO., et al.,           ) | |
|                     ) | |
|      Defendants.      ) | |
|                     ) | |

## OPINION AND ORDER

This matter is before the Court on the: (1) Motion for Partial Summary Judgment Against Defendants, filed by Plaintiffs Dee Frye and Lanhui Frye, on October 11, 2013 (DE# 48); (2) Plaintiffs' Alternative Motion for Partial Summary Judgment, filed by Plaintiffs Dee Frye and Lanhui Frye on October 11, 2013 (DE# 50); (3) Supplemental Motion for Summary Judgment filed by Defendant Nationwide Mutual Insurance Company on May 29, 2014 (DE# 72); (4) Partial Stipulation of Dismissal, filed jointly by Plaintiffs Dee Frye and Lanhui Frye and Defendant Nationwide Mutual Insurance Company on June 2, 2014 (DE# 74); and (5) Partial Stipulation of Dismissal, filed jointly by Plaintiffs Dee Frye and Lanhui Frye and Defendant Auto-Owners Insurance

Company on October 30, 2014 (DE# 86).  For the reasons set forth below, the Motion for Partial Summary Judgment (DE# 48) and the Alternative Motion for Partial Summary Judgment (DE# 50) are **DENIED**.  The Supplemental Motion for Summary Judgment (DE# 72) and the Partial Stipulation of Dismissals (DE## 74 & 86) are **GRANTED**.  Defendant Nationwide Mutual Insurance Company is hereby **DISMISSED** from this case.

FACTS

For the purposes of these motions for summary judgment, the facts below are undisputed:

Plaintiff Dee Frye ("Frye") was involved in a car accident in LaPorte County, Indiana, on January 27, 2011, in which he was seriously injured.  (Comp., DE# 80-1, ¶¶ 6-9; Aff. of Dee Frye ("Frye Aff."), DE# 80-19, ¶¶ 5-7.)  The accident was caused by the negligence of Myron Dampier ("Dampier"), the driver of the other vehicle.  (Frye Aff. ¶ 6.)  As a result of the accident, Frye sustained serious permanent injuries and damages.  (*Id.* ¶¶ 8, 10.)

At the time of the accident, Dampier was insured by Farmers Insurance ("Farmers").  (*See* Comp. ¶ 10; DE## 80-6 – 80-11.)  Frye was driving a vehicle owned by Arthur and Mary Webber ("the Webbers").  (*See* Comp. ¶ 5; Frye Aff. ¶ 10; DE# 80-2.)  The Webbers' vehicle was insured by an insurance policy ("Nationwide

Policy") issued by Nationwide Mutual Insurance Company ("Nationwide"). (Comp. ¶ 5; Frye Aff. ¶ 10; Nationwide Policy, DE# 80-2.) The accident occurred while Frye was driving that vehicle in the scope of his employment with Tri City Data & Electronic, Inc. ("Tri City"). (Comp. ¶ 6; Frye Aff. ¶ 10.) Through Tri City, Frye was covered by a commercial automobile insurance policy ("Auto-Owners Policy") issued by an affiliate of Auto-Owners Insurance Company ("Auto-Owners"). (Comp. ¶ 4; Auto-Owners Policy, DE# 80-3.) Tri City also provided a commercial umbrella policy issued by Auto-Owners that extended coverage to Frye ("Auto-Owners Umbrella Policy"). (Comp. ¶ 4; Auto-Owners Umbrella Policy, DE# 80-4.)[1]

At issue here are the terms of the Nationwide Policy and the Auto-Owners Policy.

Nationwide Policy:

The Nationwide Policy includes an endorsement for underinsured motorist ("UIM") coverage. (DE# 80-2 at 2-6.) It defines an underinsured motor vehicle as "one for which there is bodily injury liability bonds or insurance at the time of the

---

[1] Auto-Owners' response brief repeatedly notes that this Court has not yet decided whether UIM coverage is available to Plaintiffs under the Auto-Owners Policy. (*See* DE# 62.) Auto-Owners offers no facts to suggest that the policy does not provide UIM coverage to Frye. As such, for the purposes of these motions, the Court will consider the fact that the Auto-Owners Policy provides coverage to Frye to be undisputed. *See* N.D. Ind. Local R. 56 (e)(2).

accident in at least the amounts required by the financial responsibility laws where your auto is principally garaged. Their total amount, however, is less than the limits of this coverage." (*Id.* at 3 (emphasis omitted).) The Nationwide Policy's Declarations provides UIM coverage of $100,000 per person. (*Id.* at 14.)

Under the UIM endorsement, Nationwide agrees to pay compensatory damages for an insured's bodily injury caused by the driver or owner of an underinsured motor vehicle and compensatory damages due by law to other persons who suffer bodily injury while occupying "your auto." (*Id.* at 3.) The provision entitled, "LIMITS AND CONDITIONS OF PAYMENT, AMOUNTS PAYABLE FOR UNDERINSURED MOTORISTS LOSSES," states in part:

> We agree to pay losses up to the limits stated in the policy Declarations. The following applies to these limits:
>
> . . .
>
> 6. The maximum amount payable for bodily injury is the lesser of:
>
>> a) the difference between:
>>
>>> (1) the amount paid in damages to the insured by or for any person or organization who may be liable for the insured's bodily injury; and
>>>
>>> (2) the per-person limit of underinsured motorists coverage; or
>>
>> b) the difference between:

       (1)    the    total    amount   of   damages
               incurred by the insured; and

       (2)    the   amount   paid   by   or   for   any
               person or organization liable for
               the insured's bodily injury.

(*Id.* at 5-6 (emphasis omitted).)

The Nationwide Policy's UIM endorsement also addresses "Other Insurance":

   1.    If there is other insurance for bodily injury suffered by an insured while occupying a motor vehicle other than your auto, our coverage is excess over any other collectible:
      a)   insurance;
      b)   self insurance;
      c)   proceeds for a governmental entity; or
      d)   sources of recovery.

       However, this insurance will apply only in the amount by which the limit of coverage under this policy exceeds the total amount collectible from all of the above noted recovery sources.

   2.    Except as stated above, if there is other insurance similar to this coverage under any other policy, we will be liable for only our share of the loss. Our share is our proportion of the total insurance limits for the loss.
   . . .

(*Id.* at 6 (emphasis omitted).)


<u>Auto-Owners Policy:</u>

Tri City's Auto-Owners Policy extends liability coverage "to any automobile . . . while operated in your business." (DE# 80-3 at 46.) Its Declarations provides UIM coverage of $1

million per person.  (*See* DE# 80-3 at 5-7.)  The Auto-Owners

Policy sets forth the following relevant provisions regarding

UIM coverage:

> 2.   COVERAGE
>
>> a.   We will pay compensatory damages, including but not limited to loss of consortium, [that] any person is legally entitled to recover from the owner or operator of an . . . underinsured automobile[2] because of bodily injury sustained by an injured person while occupying an automobile that is covered by SECTION II – LIABILITY COVERAGE of the policy.
>
> . . .
> 3.   EXCLUSIONS
>
>> The insurance provided by this endorsement does not apply:
>
> . . .
>> d.   to directly or indirectly benefit an insurer or self-insurer under any workers compensation law or disability benefits law.
>
> . . .
> 4.   LIMIT OF LIABILITY
>
>> We will pay damages for bodily injury or property damage as follows:
>
> . . .
>> e.   The amount we pay will be reduced by any amounts paid or payable for the same bodily injury:
>>     (1)     under SECTION II – LIABILITY COVERAGE of the policy;
>>     (2)     under any workers compensation or similar law; or

---

[2] The Auto-Owners Policy defines an underinsured automobile as "an automobile to which a bodily injury liability bond or liability insurance policy applies at the time of the occurrence; (a) in at least the minimum amounts required by the Financial Responsibility Law in the state where your automobile is normally garaged; but (b) provides limits of liability less than those stated in the Declarations for Underinsured Motorist Coverage." (DE# 80-3 at 49 (emphasis omitted).)

(3)     by or on behalf of any person or
                    organization    who    may    be    legally
                    responsible for the bodily injury.

          5.     OTHER . . . UNDERINSURED MOTORIST COVERAGE

                    If there is other . . . Underinsured Motorist
                    Coverage which applies, we will pay our share of
                    the damages.   Our share will be the ratio of our
                    limit of liability to the total of all limits
                    which apply.     Total damages payable for one
                    occurrence shall be considered not to exceed the
                    limit of liability of the applicable policy that
                    has the highest limit of liability.

                    The coverage extended to automobiles you do not
                    own will be excess over any other coverage
                    available to you.[3]

(DE# 80-3 at 49-52 (emphases omitted).)


## Pre-suit Communications with Insurers

     In 2011, Farmers made an offer to Frye of its applicable

per person policy limit of $100,000, and Frye accepted.  (Comp.

¶ 10; Frye Aff. ¶ 9; *see also* DE# 80-6 at 1.)   Prior to and

following the acceptance, counsel for Dee Frye and his wife,

Lanhui  Frye  (collectively,  "Plaintiffs"),  corresponded  with

Nationwide and Auto-Owners regarding Plaintiffs' position on the

application  and  availability  of  UIM  coverage  under  their

respective insurance policies.   (DE## 80-6 – 80-17.)   In those

communications, Plaintiffs stressed their belief that Nationwide

and  Auto-Owners  would  be  responsible  for  sharing  the  first

_____
[3] The Auto-Owners Policy defines "you" as "the first named insured shown in the
Declarations," which is Tri City.  (DE# 80-3 at 26 (emphasis omitted); *see
id.* at 4.)

$100,000 of coverage on a pro rata basis, asserting that Frye had primary coverage under both the Auto-Owners policy for one million, and the Nationwide Policy for $100,000. (*See, e.g.,* DE## 80-6, 80-7.) Nationwide responded that its review had determined that no UIM coverage was available "because our limits match those of the tort-feasor carrier." (DE# 80-12.) Ultimately, no agreement could be reached between Plaintiffs and either insurer.

On January 7, 2013, Plaintiffs filed a complaint against Auto-Owners and Nationwide in the St. Joseph County Circuit Court of the State of Indiana. (DE# 1-1.) The complaint alleges that Plaintiffs are entitled to recover UIM coverage from each of the Defendants for all damages resulting from the car accident, up to the limits of coverage, and that Nationwide and Auto-Owners breached their duties of good faith by failing to respond to and/or denying Plaintiffs' claims. (Comp. ¶¶ 13-15.) Plaintiffs further seek a declaration that the Nationwide Policy and the Auto-Owners Policy do not apply to directly or indirectly benefit any insurer under any worker's compensation law and that the policies provide for a pro rata payment by Nationwide and Auto-Owners under the primary limits of coverage. (*Id.* ¶¶ 2, 3.) Plaintiffs allege that their damages exceed two million dollars. (DE# 73-3 at 6.)

On February 8, 2013, Nationwide removed the action to federal court. (DE# 1.) Both Auto-Owners and Nationwide answered the complaint. (DE## 12, 13.) On August 16, 2013, Nationwide filed a motion for summary judgment, which the parties fully briefed. (DE# 32.) On October 11, 2013, Plaintiffs filed a partial summary judgment motion against all defendants, and an alternative motion for partial summary judgment. (DE## 48, 50.) On November 8, 2013, Nationwide filed its response to Plaintiffs' partial summary judgment motion, and Auto-Owners filed its response to both of Plaintiffs' partial summary judgment motions. (DE## 60, 62.) Plaintiffs did not submit reply briefs to either partial summary judgment motion. On March 31, 2014, the Court denied without prejudice Nationwide's summary judgment motion as premature because it would have required Plaintiffs to respond to arguments regarding their breach of duty of good faith claims without an opportunity to conduct discovery in support of their position. (DE# 67 at 10-11.)

On May 29, 2014, Nationwide filed its supplemental motion for summary judgment. (DE# 72.) Plaintiffs filed their response to this motion on July 1, 2014. (DE# 79.) On July 15, 2014, Nationwide filed a reply brief in support of its motion. (DE# 83.) Since the instant motions were filed, the parties have stipulated to the dismissal of Plaintiffs' claims of breach

of duty of good faith against both Nationwide and Auto-Owners. (DE## 74 & 86.)

<u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine dispute of material fact exists, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See Ogden v. Atterholt,* 606 F.3d 355, 358 (7th Cir. 2010). A party opposing a properly supported summary judgment motion may not rely on allegations in his own pleading, but rather must "marshal and present the court with the evidence [he] contends will prove [his] case." *Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation

-10-

or conjecture will not suffice." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (citation omitted). If the non-moving party fails to establish the existence of an essential element on which he bears the burden of proof at trial, summary judgment is proper. *See Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

DISCUSSION

For the purpose of these motions, no dispute of material fact exists. Rather, the motions raise issues of insurance contract interpretation. Nationwide's summary judgment motion argues that the Nationwide Policy allows a setoff of Farmers' $100,000 payment, thereby reducing Nationwide's liability to zero. (DE## 72, 73.) Plaintiffs oppose this motion, and move for summary judgment, arguing that the Nationwide Policy and the Auto-Owners Policy provide for pro rata sharing of the UIM coverage limits allegedly available to Plaintiffs. (DE## 48, 79.) Plaintiffs also seek a determination that any such benefits will not be subject to worker's compensation liens. (DE# 48.) In their alternative summary judgment motion, Plaintiffs argue that Auto-Owners must make available one million dollars of UIM benefits, without any setoffs, to Plaintiffs' claim. (DE# 50.)

In Indiana,[4] "[t]he interpretation of an insurance policy is primarily a question of law for the court, and it is therefore a question which is particularly suited for summary judgment." *Wagner v. Yates,* 912 N.E.2d 805, 808 (Ind. 2009) (citation omitted). Insurance policies are analyzed "using the same rules of interpretation applied to other contracts." *Auto-Owners Inc. Co. v. Benko*, 964 N.E.2d 886, 890 (Ind. Ct. App. 2012) (citation omitted). Courts "interpret an insurance policy with the goal of ascertaining and enforcing the parties' intent as revealed by the insurance contract." *Westfield Cos. v. Knapp,* 804 N.E.2d 1270, 1274 (Ind. Ct. App. 2004) (citation omitted). "[C]lear and unambiguous language in an insurance policy should be given its plain and ordinary meaning, even if those terms limit an insurer's liability." *Everett Cash Mut. Ins. Co. v. Taylor,* 926 N.E.2d 1008, 1012 (Ind. 2010) (citation omitted). "Where an ambiguity exists, that is, where reasonably intelligent people may interpret the policy's language differently, Indiana courts construe insurance policies strictly against the insurer." *Auto-Owners*, 964 N.E.2d at 890 (citation omitted). However, "an ambiguity is not affirmatively established simply because controversy exists and one party asserts an interpretation contrary to that asserted by the opposing party." *Beam v.*

---

[4] Where, as here, "neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits." *Citadel Group Ltd. v. Washington Reg'l Med. Ctr.*, 692 F.3d 580, 587 n.1 (7th Cir. 2012) (quotation omitted).

*Wausau Ins. Co.,* 765 N.E.2d 524, 528 (Ind. 2002) (quotation omitted). Ultimately, "[t]he meaning of an insurance contract can only be gleaned from a consideration of all its provisions, not from an analysis of individual words or phrases. [The Court] must accept an interpretation of the contract language that harmonizes the provisions rather than the one which supports a conflicting version of the provisions." *Adkins v. Vigilant Ins. Co.,* 927 N.E.2d 385, 389 (Ind. Ct. App. 2010) (citations omitted); *see Masten v. AMCO Ins. Co.,* 953 N.E.2d 566, 569 (Ind. Ct. App. 2011).

When interpreting UIM policy provisions, the Court is mindful of the general objectives of Indiana's UIM legislation. *See Masten*, 953 N.E.2d at 570. Indiana Code section 27-7-5-2 is "a mandatory coverage, full-recovery, remedial statute," and "its provisions are to be considered a part of every automobile liability policy the same as if written therein." *United Nat. Ins. Co. v. DePrizio,* 705 N.E.2d 455, 460 (Ind. 1999) (quotations omitted). The underlying purpose of UIM coverage "is to give the insured the recovery he or she would have received if the underinsured motorist had maintained an adequate policy of liability insurance." *Corr v. Am. Family Ins.,* 767 N.E.2d 535, 540 (Ind. 2002). However, "a full-recovery statute will not necessarily assure full indemnification for all

potential damage to all potential insureds[.]" *Id*. The intent

of the legislature is to:

> give insureds the opportunity for full compensation
> for injuries inflicted by financially irresponsible
> motorists. Due to the remedial nature of this type of
> coverage, underinsured motorist legislation is to be
> liberally construed, and similar to all insurance
> statutes and policies, is to be read in a light most
> favorable to the insured.

*Masten*, 953 N.E.2d at 570 (internal quotation and citation

omitted).

Nationwide's Supplemental Motion for Summary Judgment

In its Supplemental Motion for Summary Judgment, Nationwide

argues that the terms of the Nationwide Policy entitle it to set

off Farmers' $100,000 payment from the $100,000 UIM per person

limits available under the policy, thereby reducing Nationwide's

liability to zero. Nationwide relies upon a provision in the

Nationwide Policy that specifically limits payment for UIM

losses ("UIM Limitation Provision"):

> The maximum amount payable for bodily injury is the
> lesser of:
>
> a) the difference between:
>
> > (1) the amount paid in damages to the
> > insured by or for any person or
> > organization who may be liable for the
> > insured's bodily injury; and
> >
> > (2) the per-person limit of underinsured
> > motorists coverage; or

b) the difference between:

    (1)   the total amount of damages incurred by the insured; and

    (2)   the amount paid by or for any person or organization liable for the insured's bodily injury.

(DE# 80-2 at 5-6 (emphasis omitted).) The parties do not dispute that Farmers paid Frye $100,000 for his injuries, or that the Nationwide Policy provides UIM coverage of $100,000 per person. Applying these facts to the UIM Limitation Provision, Nationwide asserts that the maximum amount payable is the lesser of: the difference between the amount paid in damages by Farmers ($100,000), and the per-person limit of its UIM coverage ($100,000), which is zero; or the difference between the amount of damages incurred by the insured (allegedly more than $2 million), and the amount paid by Farmers ($100,000), which is $1.9 million. Because zero is less than $1.9 million, Nationwide contends that it owes Plaintiffs nothing.

Nationwide relies on *Castillo v. Prudential Property & Casualty Insurance Co.*, 834 N.E.2d 204 (Ind. Ct. App. 2005), to support its position. In that case, Castillo was injured in a car hit-and-run accident while he was a passenger in a vehicle driven by Moreno. *Id*. at 205. Moreno's vehicle was insured by Prudential. *Id*. Castillo sued Moreno for negligence and separately sued Prudential for uninsured motorist ("UM")

coverage. *Id.* Castillo settled with Moreno for Prudential's policy limit of $50,000 and pursued his suit against Prudential for an additional $50,000 of UM coverage. *Id.* The Prudential policy stated that UM payments "will be reduced by any amount payable by persons responsible for the accident. Payments under this part will also be reduced by any amount payable under this policy or by other sources." *Id.* at 207. The Indiana Court of Appeals found that this clause "clearly and unambiguously reduced this amount by 'any amount payable under this policy,' *i.e.*, the $50,000.00 settlement already tendered." *Id.* The court held that, pursuant to this clause, Prudential was entitled to set off the $50,000 settlement from its UM coverage limit of $50,000, for a further recovery of zero. *Id.* at 207. Citing *Castillo*, Nationwide argues that the UIM Limitations Provision entitles it to set off Farmers' $100,000 payment from the Nationwide Policy's UIM coverage limit.

Plaintiffs do not take issue with Nationwide's interpretation of the UIM Limitations Provision or *Castillo*. Rather, they argue that the Nationwide Policy is ambiguous as to whether the UIM Limitations Provision applies when its "other insurance" provision comes into play. (DE# 79 at 22-24.) The "other insurance" provision states in part that "if there is other insurance similar to this coverage under any other policy, we [Nationwide] will be liable for only our share of the loss.

-16-

Our share is our proportion of the total insurance limits for the loss." (DE# 80-2 at 6 ("Other Insurance Provision").) Plaintiffs assert the Auto-Owners Policy and the Nationwide Policy provide similar primary UIM coverage, thus triggering the Other Insurance Provision. (*See* DE# 79 at 1-2.) They argue that because the phrase "our share is our proportion of the total insurance limits for the loss" is ambiguous, it must be construed against Nationwide. (*Id.* at 23.) As such, the UIM Limitations Provision should be disregarded entirely, precluding any setoff of the $100,000 payment from Farmers. (*Id.* at 22.)

In reply, Nationwide asserts that its "share of the loss" is zero because Plaintiffs received from Farmers the entire amount of UIM coverage available under the Nationwide Policy. (DE# 83 at 7.) Nationwide further argues that making it liable for a proportionate share of insurance limits relative to Auto-Owners' limits would "render[] set-offs immaterial" – a result not contemplated by the contracting parties or Indiana's legislature. (*Id.*)

While not addressed by any party, the Court notes that Nationwide's UIM Limitations Provision is nearly identical to the limitations on coverage codified in Indiana Code section 27-7-5-5(c).[5] The Indiana Court of Appeals considered the language

---

[5] Section 27-7-5-5(c) states:

of Section 27-7-5-5(c) in *Kinslow v. Geico Insurance Co.,* 858
N.E.2d 109 (Ind. Ct. App. 2006). In that case, Mr. and Mrs.
Kinslow were injured (fatally and seriously, respectively) in a
multiple-vehicle accident, after which one vehicle fled the
scene. *Id.* at 110. Mrs. Kinslow ("Kinslow") settled with one
tortfeasor's insurer and sued her insurer, Geico, for recovery
of UM benefits under two Geico insurance policies. *Id.* Geico
refused to pay, arguing that any UM benefits owed under its
policies were completely offset by the settlement payment
Kinslow had received from the tortfeasor's insurer. *Id.* The
court noted that "the statutes governing UM/UIM insurance are
considered a part of every automobile liability policy the same
as if written therein." *Id.* at 114 (citation omitted). It held
that Section 27-7-5-5(c) "establish[es] maximum and minimum
parameters for the amount of a recovery a plaintiff is entitled
to as a result of a UM or UIM claim," and that the language of

---

The maximum amount payable for bodily injury *under uninsured or
underinsured motorist coverage* is the lesser of:
    *(1)*   the difference between:
        *(A)* the amount paid in damages to the insured
        by or for any person or organization who may be
        liable for the insured's bodily injury; and
        *(B)* the per person limit of *uninsured or
        underinsured motorist coverage provided in the
        insured's policy*; or
    *(2)*   the difference between:
        *(A)* the total amount of damages incurred by the
        insured; and
        *(B)* the amount paid by or for any person or
        organization liable for the insured's bodily
        injury.
Ind. Code § 27-7-5-5(c) (emphasis denotes language not found in Nationwide's
UIM Limitations Provision).

Section 27-7-5-5(c) "is clear and unambiguous and is not open to interpretation." *Id.* (citation omitted). Applying Section 27-7-5-5(c), the court found that the maximum UM coverage recoverable was zero. *Id.* The court refused to interpret the policies in the manner suggested by Kinslow, explaining that "allowing Kinslow to recover anything under either Geico policy would contravene clear and unambiguous statutory language." *Id.; see also Edwards v. Vernon Fire & Cas. Ins. Co.,* 571 N.E.2d 1306, 1308 (Ind. Ct. App. 1991) (applying Section 27-7-5-5(c) to find plaintiff "cannot recover because his policy has [a UIM] coverage limit of $25,000 and he has received $25,000 from the tortfeasor's insurance company").

Based on this Court's independent review of the UIM Limitations Provision and *Kinslow*'s validation of the nearly identical language of Section 27-7-5-5(c), the Court finds the language of the UIM Limitations Provision to be clear and unambiguous. "[W]here an insurer crafts a policy using clear and unambiguous language that comports with public objectives expressed in state statute, we apply that plain language, even if the result is to limit the insurer's liability." *Justice v. Am. Family Mut. Ins. Co.,* 4 N.E.3d 1171, 1774 (Ind. 2014) (citation omitted). Applying the UIM Limitations Provision to the undisputed facts, the difference between the amount paid by Farmers ($100,000) and the per person limit for UIM coverage

under the Nationwide Policy ($100,000) is zero, and the difference between Plaintiffs' alleged damages ($2 million) and the amount paid by Farmers ($100,000) is $1.9 million. Zero is less than $1.9 million. Thus, the UIM Limitations Provision dictates that the maximum amount payable under the Nationwide Policy is zero. *See Castillo*, 834 N.E.2d at 207; *Kinslow*, 858 N.E.2d at 114.

Contrary to Plaintiffs' assertions, this outcome is not altered by the Nationwide Policy's Other Insurance Provision. Plaintiffs assert that because the Auto-Owners Policy qualifies as "other insurance similar to this coverage," and Nationwide's "share of the loss" is allegedly ambiguous, the Court should disregard the UIM Limitations Provision entirely. Plaintiffs' interpretation of the Nationwide Policy supports a conflicting version of its provisions, rather than harmonizing them. *Cf. Adkins*, 927 N.E.2d at 389 (courts "must accept an interpretation of the contract language that harmonizes the provisions rather than the one which supports a conflicting version of the provisions.").

The Court finds that the provisions of the Nationwide Policy can be harmonized. According to the Other Insurance Provision, Nationwide's "share of the loss" is its proportion of "the total insurance limits for the loss," which Plaintiffs concede is the $100,000 UIM coverage limit stated in the policy

-20-

Declarations. (*See* DE# 79 at 22-23.) The UIM Limitations Provision is found in the "Limits and Conditions of Payment, Amounts Payable for [UIM] Losses" provision, which begins, "[w]e agree to pay losses *up to the limits stated in the policy Declarations. The following applies to these limits*: . . . 6. [the UIM Limitations Provision]." (DE# 80-2 at 5-6 (emphasis added).) Reading these provisions together, the "total insurance limits for the loss" (*i.e.*, the $100,000 UIM coverage limit) is subject to the UIM Limitations Provision. Thus, the UIM Limitations Provision limits the amount payable to insureds, even when "other insurance" applies. *Cf. Am. Econ. Ins. Co. v. Motorists Mut. Ins. Co.,* 605 N.E.2d 162, 164-65 (Ind. 1992) (instructing that insureds had recourse against primary and excess insurers for UIM coverage limits, less amounts previously paid on the tortfeasor's behalf). Given the undisputed facts presented here, the UIM Limitations Provision dictates that the maximum amount payable is zero, even if "other insurance" applies.

This interpretation harmonizes provisions that were contracted for by the parties to the Nationwide Policy. *See Westfield Cos.*, 804 N.E.2d at 1274 (courts must interpret an insurance policy with the goal of ascertaining and enforcing the parties' intent as revealed by the insurance contract as whole). Moreover, this interpretation does not violate the underlying

purpose of Indiana's UIM statute, which defines an uninsured motor vehicle as: "an insured motor vehicle where the limits of coverage available for payment to the insured under all bodily injury liability policies covering persons liable to the insured *are less than the limits for the insured's underinsured motorist coverage* at the time of the accident. . . ." Ind. Code § 27-7-5-4(b) (emphasis added). Here, the statutory aim of Section 27-7-5-4(b) is satisfied because Plaintiffs received $100,000 from Farmers, the same UIM coverage limit provided under the Nationwide Policy. *See Lakes v. Grange Mut. Cas. Co.,* 964 N.E.2d 796, 803 (Ind. 2012) (citation omitted) ("[T]he proper comparison in determining whether the tortfeasor's vehicle was underinsured was a comparison of what the claimant actually received and the UIM policy limit."). The Nationwide Policy thus comports with the Section 27-7-5-4(b) and does not violate its intent.

For these reasons, the Court **GRANTS** Nationwide's Supplemental Motion for Summary Judgment.


Plaintiffs' Motion for Partial Summary Judgment

In their Motion for Partial Summary Judgment, Plaintiffs argue that the "other insurance" provisions contained in the Nationwide Policy and Auto-Owners Policy can be read in harmony to provide for pro rata sharing of the contribution of UIM

benefits. Because the Court has determined Nationwide's liability is zero, Plaintiffs' motion as it relates to Nationwide is denied.[6]

Plaintiffs also argue that any UIM benefits available under the Auto-Owners Policy are not subject to any worker's compensation lien. (DE# 49 at 5-7.) Auto-Owners concedes that "no workers compensation lien identified by the workers compensation carrier would be enforceable against the [UIM] coverage." (DE# 62 at 2.) Both Plaintiffs and Auto-Owners cite *Walkup v. Wabash Nat. Corp.,* 702 N.E.2d 713 (Ind. 1998), as dispositive of this issue. In *Walkup*, Walkup was injured in a

---

[6] Even if Nationwide's liability had not been zeroed out, the Court has its doubts about Plaintiffs' pro rata argument. Under Indiana Code section 27-8-9-7 ("Owner's Statute"), where a vehicle owner's insurance coverage is considered primary, the owner's coverage limit must be exhausted before recovery under any other vehicle insurance coverage. *See* Ind. Code § 27-8-9-7(b) & (c). This statute "provide[s] statutory tiebreakers for determining the priority of insurance coverage in circumstances where the priority of coverage might not otherwise be immediately clear." *Old Republic Ins. Co. v. RLI Ins. Co.,* 887 N.E.2d 1003, 1010 (Ind. Ct. App. 2008) (citation omitted). The Owner's Statute "was clearly intended to resolve coverage disputes caused by competing primary insurers' 'other insurance clauses.'" *Monroe Guar. Ins. Co. v. Langreck,* 816 N.E.2d 485, 498-99 (Ind. Ct. App. 2004).

Plaintiffs and Nationwide do not dispute that Nationwide insured the vehicle owner and that the Nationwide Policy and the Auto-Owners Policy both provided primary coverage. (*See* DE## 80-6, 80-7; DE# 83 at 6.) Given these facts, the Owner's Statute appears to apply here.

Plaintiffs contend that the Owner's Statute does not apply because Nationwide's and Auto-Owner's "other insurance" provisions can be read in harmony to provide UIM benefits on a pro rata basis. However, the cases cited by Plaintiffs in support of this proposition involve insurers affording different levels of coverage. *See id.* (involving a primary insurer and an excess insurer); *Old Republic,* 887 N.E.2d at 1012 (same); *Citizens Ins. Co. v. Ganschow,* 859 N.E.2d 786, 792 (Ind. App. Ct. 2007) (same); *Cincinnati Ins. Co. v. Am. Alternative Ins. Corp.,* 886 N.E.2d 326, 333 (Ind. Ct. App. 2007) (same). In several cases, the courts declined to apply statutory tiebreakers because of the insurers' different coverage levels. *See, e.g., Monroe Guar.,* 816 N.E.2d at 498; *Old Republic,* 887 N.E.2d at 1012. Because Nationwide is dismissed from this case on other grounds, the Court need not delve further into, or decide, this issue.

motor vehicle accident while driving in the course of his employment. *Id.* at 713. Walkup's employer sued to enforce a lien for worker's compensation benefits after Walkup settled his claims with a UM insurer. *Id*. at 714. The Supreme Court of Indiana found that the insurance policy at issue included an exclusion for costs covered by worker's compensation benefits, and thus, Walkup's settlement with the insurer did not include such costs. *Id*. at 715. The employer's lien was ineffective because no proceeds were left after the exclusion that could be identified with the lien. *Id.*

Similar to the insurance policy in *Walkup*, the Auto-Owners Policy states that UIM coverage does not apply "to directly or indirectly benefit an insurer or self-insurer under any workers compensation law or disability benefits law." (DE# 80-3 at 50.) However, unlike *Walkup*, Plaintiffs do not allege that any party holds, or has attempted to enforce, any worker's compensation lien requiring the application of this policy provision.

Given the lack of allegations of an actual controversy regarding a worker's compensation lien, Plaintiffs' motion appears to be an invitation for an advisory opinion, which this Court cannot provide. "[D]istrict judges can't suspend the application of Article III or grant themselves the power to issue advisory opinions one case at a time, and litigants can't stipulate to the enlargement of federal jurisdiction. A case or

controversy must be present at every moment of the litigation." *U.S. v. Accra Pac, Inc.,* 173 F.3d 630, 633 (7th Cir. 1999); *see Coffman v. Breeze Corp.*, 323 U.S. 316, 324, 65 S. Ct. 298, 89 L. Ed. 264 (1945) (declaratory judgment procedure "may not be made the medium for securing an advisory opinion in a controversy which has not arisen." (citations omitted)). Therefore, the Court **DENIES** Plaintiffs' Motion for Partial Summary Judgment.

Plaintiffs' Alternative Motion for Partial Summary Judgment

Plaintiffs argue that if the Court dismisses Nationwide from this action, it should "declar[e] that the entire one million dollar policy limits of Auto[-]Owners' policy is excess coverage available to the Plaintiffs beyond the $100,000.00 limits of Nationwide's policy." (DE# 51 at 3.) Plaintiffs claim that they have a combined amount of $2.1 million in UIM benefits ($100,000 under the Nationwide Policy, $1 million under the Auto-Owners Policy, and $1 million under the Auto-Owners Umbrella Policy) and that the $100,000 paid by Farmers reduces their total UIM benefits to $2 million. (*Id*. at 4.) Citing no case law, statute, or policy provision, Plaintiffs assert that "if the Court determines that Nationwide gets the entire set-off, then Auto[-]Owners will be required to cover entirely without any set-off." (*Id.*)

Auto-Owners responds that if the Auto-Owners Policy is found to afford coverage to Plaintiffs for this loss, it should be allowed to set off the $100,000 amount paid by Farmers. (DE# 62 at 4-5.) Auto-Owners points to a provision in the Auto-Owners Policy that states, "[t]he amount we pay will be reduced by any amounts paid or payable for the same bodily injury . . . under any worker's compensation or similar law; or . . . by or on behalf of any person or organization who may be legally responsible for the bodily injury." (*Id*. at 3-4.) Plaintiffs do not reply to this argument.

Indiana courts have enforced setoff provisions in connection with UIM coverage. *See, e.g., Hardiman v. Govt'l Interins. Exch*., 588 N.E.2d 1331, 1334 (Ind. Ct. App. 1992); *see also Wagner,* 912 N.E.2d at 808-09 ("hav[ing] no quarrel" with the general proposition that policy language requiring setoffs has been and should be enforced). Here, Plaintiffs do not explain why the Court should disregard the setoff provision in the Auto-Owners Policy. Construing the facts and drawing all reasonable inferences in the light most favorable to Auto-Owners, the Court finds that Plaintiffs are not entitled to judgment as a matter of law on this issue. Therefore, Plaintiffs' Alternative Motion for Partial Summary Judgment is **DENIED**.

<u>CONCLUSION</u>

For the reasons set forth above, the Motion for Partial Summary Judgment (DE# 48) and the Alternative Motion for Partial Summary Judgment (DE# 50) are **DENIED**. The Supplemental Motion for Summary Judgment (DE# 72) and the Partial Stipulation of Dismissals (DE## 74 & 86) are **GRANTED**. Defendant Nationwide Mutual Insurance Company is hereby **DISMISSED** from this case.

**DATED:  February 4, 2015**      **/s/ RUDY LOZANO, Judge**
                                  **United States District Court**