# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

DEE FRYE, *et al.*,                    )
                                       )
        Plaintiffs,                    )
                                       )
    vs.                                )
                                       )        NO. 3:13-CV-113
AUTO-OWNERS INSURANCE                  )
CO., *et al.*,                         )
                                       )
        Defendants.                    )
                                       )

## OPINION AND ORDER

This matter is before the Court on: (1) Plaintiffs' Motion for Certification of Questions of Indiana Law to the Indiana Supreme Court, filed by Plaintiffs Dee Frye and Lanhui Frye on May 12, 2015 (DE# 92); (2) Defendant Auto-Owners Insurance Company's Motion for Summary Judgment, filed on May 29, 2014 (DE# 94); and (3) Plaintiffs' Motion for Partial Summary Judgment, filed on June 11, 2015 (DE# 96). For the reasons set forth below, Plaintiffs' Motion for Certification (DE# 92) is **DENIED.** Defendant's Motion for Summary Judgment (DE# 94) is **GRANTED.** Plaintiffs' Motion for Partial Summary Judgment (DE# 96) is **DENIED.** The Defendant is **ORDERED** to submit evidence that it has paid the full amount it concedes it owes to Plaintiffs under the Commercial Umbrella Insurance Policy ($382,314.21) within thirty (30) days of the date

of this Order.  When the Court is satisfied that Auto-Owners has paid this amount to Plaintiffs, it will dismiss this case.

FACTS

For the purposes of these motions for summary judgment, the facts below are undisputed:

Plaintiff Dee Frye ("Frye") was involved in a car accident in LaPorte County, Indiana, on January 27, 2011, in which he was seriously injured.  Frye was driving a vehicle insured by Nationwide Mutual Insurance Company ("Nationwide").  The accident was caused by the negligence of Myron Dampier ("Dampier"), the driver of the other vehicle.  The accident occurred while Frye was driving a vehicle in the scope of his employment with Tri City Data & Electronic, Inc. ("Tri City").  Through Tri City, Frye was covered by a Commercial Automobile Insurance Policy ("Automobile Policy") issued by an affiliate of Auto-Owners Insurance Company ("Auto-Owners").  Tri City also provided a Commercial Umbrella Insurance Policy issued by Auto-Owners that extended coverage to Frye ("Umbrella Policy").

Auto-Owners' Automobile Policy

Auto-Owners' Automobile Policy provides underinsured motorist ("UIM") coverage of $1 million per person.  (*See* DE# 46-3 at 5-7.)  The Automobile Policy sets forth the following relevant provisions regarding UIM coverage:

2.   COVERAGE

    a.   We will pay compensatory damages, including but not limited to loss of consortium, [that] any person is legally entitled to recover from the owner or operator of an uninsured automobile or underinsured automobile because of bodily injury sustained by an injured person while occupying an automobile that is covered by SECTION II – LIABILITY COVERAGE of the policy.

. . .

4.   LIMIT OF LIABILITY

    We will pay damages for bodily injury or property damage as follows:

    a.   Our limit of liability for compensatory damages, including but not limited to loss of consortium, because of or arising out of bodily injury to any one person in any one occurrence is the least of:

        (1)  the difference between:

            (a)  the amount paid in compensatory damages, including but not limited to loss of consortium, to the injured person by or for any person or organization who may be liable for the injured person's bodily injury; and

            (b)  the "each person" limit for Uninsured or Underinsured Motorist Coverage stated in the Declarations; or

        (2)  the difference between:

            (a)  the total amount of compensatory damages, including but not limited to loss of consortium, incurred by the injured person; and

            (b)  the amount paid by or for any person or organization liable for the injured person's bodily injury.

. . .

    e.   The amount we pay will be reduced by any amounts paid or payable for the same bodily injury:

(1)     under SECTION II – LIABILITY
        COVERAGE of the policy;
(2)     under any workers compensation or
        similar law; or
(3)     by or on behalf of any person or
        organization who may be legally
        responsible for the bodily injury.

5.  OTHER [UM] OR [UIM] COVERAGE

    If there is other [UM] or [UIM] Coverage which
    applies, we will pay our share of the damages.  Our
    share will be the ratio of our limit of liability
    to the total of all limits which apply.  Total
    damages payable for one occurrence shall be
    considered not to exceed the limit of liability of
    the applicable policy that has the highest limit of
    liability.

    The coverage extended to automobiles you do not own
    will be excess over any other coverage available to
    you.

(DE# 46-3 at 49-52 (emphases omitted).)

Auto-Owners' Umbrella Policy

Auto-Owners originally issued the Umbrella Policy to Tri City
on November 9, 2007.  The Umbrella Policy was subsequently renewed
each year through November 9, 2011.  (DE# 95-1 at 2 (Reiner Aff.
¶ 7(b)-(f)).)  The Umbrella Policy's liability limit and UIM
coverage limit were each $1 million per occurrence from 2007
through May 4, 2010.  (*Id.*)  Beginning on May 5, 2010, a change
endorsement increased the liability limit to $5 million per
occurrence, while the UIM coverage limit remained at $1 million.
(*Id*. at ¶ 7(b).)  At the time of Frye's accident in 2011, the
Declarations pages of the Umbrella Policy provided a UIM coverage

-4-

limit of $1 million, and a liability limit of $5 million.  (DE# 46-4 at 5-7.)  There is no written rejection of UIM coverage limits less than $5 million.  The Umbrella Policy states in relevant part:

2.    COVERAGE
      [UM
      UIM
      UM] PROPERTY DAMAGE

      Subject to 4. CONDITIONS below

      a.    (1) We will pay compensatory damages to an injured person covered by an underlying policy in accordance with the provisions of the automobile insurance shown in the Schedule of Underlying Insurance or such policy's replacement; . . .
            . . .

4.    CONDITIONS

The following provisions shall apply irrespective of any similar conditions in an underlying policy:
. . .
      b.    The following additional provisions are only applicable to this endorsement:

      (1)   Limit of Liability

            (a)   The most we shall pay under this endorsement for all compensable damages in any one occurrence shall not exceed the Limit of Liability shown in the Declarations for:

                  1)   The combined coverages of [UM] and [UIM];

                  . . .

            (c)   For [UIM] coverage, our Limit of Liability shall be reduced by the any amounts:

-5-

> 1) Paid under the Bodily Injury Liability coverage of this policy for the same bodily injury;
>
> 2) Paid or payable for the same bodily injury covered under any workers compensation or similar law; and
>
> 3) Paid by or on behalf of any person or organization who may be legally responsible for the bodily injury
>
> which are in excess of the retained limit.

(DE# 46-4 at 31-33.)

Background and Procedural History

After the accident, Frye received worker's compensation benefits in the amount of $692,895.79, which included payments for medical expenses, temporary total disability and permanent partial impairment. (DE # 95-2 at 2.) Dampier's insurer made an offer to Frye of its applicable per person policy limit of $100,000, and Frye accepted. Frye offered to assign the $100,000 payment to the worker's compensation insurer and his counsel. (DE# 97-1 at 4.) Pursuant to the written agreement, Tri City and Auto-Owners (as the worker's compensation insurer) accepted the assignment of $75,000 in partial satisfaction of their statutory lien, and $25,000 was paid to Frye's counsel. (*Id.*)

On January 7, 2013, Frye and his wife, Lanhui Frye (collectively, "Plaintiffs"), filed a complaint against Auto-Owners and Nationwide in the St. Joseph County Circuit Court of

the State of Indiana, alleging that they are entitled to recover UIM coverage for all damages resulting from the car accident, up to the limits of coverage. (DE# 1-1.) The action was removed to federal court. (DE# 1.) Plaintiffs and Nationwide filed motions for summary judgment. On February 4, 2015, this Court denied Plaintiffs' motions for summary judgment, granted Nationwide's motion for summary judgment, and dismissed Nationwide from the case. (DE# 88.)

Auto-Owners reached a partial settlement agreement with Plaintiffs, and paid them $1,188,799.60 in November 2014. (DE# 95-1 at 2 (Reiner Aff. ¶ 8).) This amount consisted of $900,000 from the UIM coverage of the Automobile Policy ($1 million coverage limit less a setoff of the $100,000 paid by Dampier's insurer), and $288,799.60 from the UIM coverage of the Umbrella Policy (assuming a $1 million coverage limit less a setoff of amounts paid in worker's compensation benefits). (*Id.*) Auto-Owners indicates that it is in the process of paying Plaintiffs an additional amount of $18,304.61 owed under the Umbrella Policy. (DE# 95 at 23.)

On May 12, 2015, Plaintiffs filed a motion for certification of three questions of Indiana law to the Indiana Supreme Court. (DE# 92.) Auto-Owners objects to certification of these questions. (DE# 91.) On June 11, 2015, Auto-Owners filed a motion for summary judgment, which the parties have fully briefed. (DE# 94.) On the

same day, Plaintiffs filed a motion for partial summary judgment. (DE# 96.) Auto-Owners filed a response to this motion. Plaintiffs did not file a reply brief. The Court is prepared to rule on these motions.


SUMMARY JUDGMENT STANDARD

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine dispute of material fact exists, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See Ogden v. Atterholt,* 606 F.3d 355, 358 (7th Cir. 2010). A party opposing a properly supported summary judgment motion may not rely on allegations in his own pleading, but rather must "marshal and present the court with the evidence [he] contends will prove [his] case." *Goodman*

*v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010).

"[I]nferences relying on mere speculation or conjecture will not

suffice." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009)

(citation omitted). If the non-moving party fails to establish

the existence of an essential element on which he bears the burden

of proof at trial, summary judgment is proper. *See Massey v.*

*Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).


DISCUSSION

For the purpose of the parties' motions for summary judgment,

no dispute of material fact exists. Rather, the motions raise

issues of insurance contract interpretation. Auto-Owners' motion

for summary judgment asserts that Auto-Owners has paid or is in

the process of paying all amounts due under the Automobile Policy

and the Umbrella Policy. Plaintiffs oppose this motion, and move

for summary judgment, arguing that Auto-Owners is not entitled to

set off the $100,000 payment from Dampier's insurer. Plaintiffs

also assert that the UIM coverage limit under the Umbrella Policy

is $5 million, rather than $1 million, by operation of law.

Finally, Plaintiffs maintain that under the Umbrella Policy, Auto-

Owners is not entitled to set off the amount paid by the worker's

compensation insurer, and that, if such setoff is allowed, it

should be taken from the amount of Plaintiffs' damages, rather

than the UIM coverage limit.

In Indiana,[1] "[t]he interpretation of an insurance policy is primarily a question of law for the court, and it is therefore a question which is particularly suited for summary judgment." *Wagner v. Yates,* 912 N.E.2d 805, 808 (Ind. 2009) (citation omitted). Insurance policies are analyzed "using the same rules of interpretation applied to other contracts." *Auto-Owners Inc. Co. v. Benko*, 964 N.E.2d 886, 890 (Ind. Ct. App. 2012) (citation omitted). Courts "interpret an insurance policy with the goal of ascertaining and enforcing the parties' intent as revealed by the insurance contract." *Westfield Cos. v. Knapp,* 804 N.E.2d 1270, 1274 (Ind. Ct. App. 2004) (citation omitted). "[C]lear and unambiguous language in an insurance policy should be given its plain and ordinary meaning, even if those terms limit an insurer's liability." *Everett Cash Mut. Ins. Co. v. Taylor,* 926 N.E.2d 1008, 1012 (Ind. 2010) (citation omitted)). "Where an ambiguity exists, that is, where reasonably intelligent people may interpret the policy's language differently, Indiana courts construe insurance policies strictly against the insurer." *Auto-Owners*, 964 N.E.2d at 890 (citation omitted). However, "an ambiguity is not affirmatively established simply because controversy exists and

---

[1] Where, as here, "neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits." *Citadel Group Ltd. v. Washington Reg'l Med. Ctr.*, 692 F.3d 580, 587 n.1 (7th Cir. 2012) (quotation omitted).

one party asserts an interpretation contrary to that asserted by the opposing party." *Beam v. Wausau Ins. Co.,* 765 N.E.2d 524, 528 (Ind. 2002) (citation omitted). Ultimately, the meaning of a policy "can only be gleaned from a consideration of all its provisions, not from an analysis of individual words or phrases. [The Court] must accept an interpretation of the contract language that harmonizes the provisions rather than the one which supports a conflicting version of the provisions." *Adkins v. Vigilant Ins. Co.,* 927 N.E.2d 385, 389 (Ind. Ct. App. 2010) (citations omitted); *see Masten v. AMCO Ins. Co.,* 953 N.E.2d 566, 569 (Ind. Ct. App. 2011).

The Automobile Policy's Setoff of the Tortfeasor's Payment

Auto-Owners argues that the terms of the Automobile Policy entitle it to set off Dampier's insurer's $100,000 payment from the $1 million UIM per person limits available under the policy, thereby reducing Auto-Owners' liability to $900,000. Plaintiffs assert that no deduction should be made for the $100,000 payment.

The parties rely upon Section 4(a) of the Automobile Policy, which limits payment for UIM losses:

Our limit for liability for compensatory damages . . . is the least of:

> (1) the difference between:
>
> > (a) the amount paid in compensatory damages . . . to the injured person by or for any person or organization

> who may be liable for the injured
> person's bodily injury; and
>
> (b) the "each person" limit for
> Uninsured or Underinsured Motorist
> Coverage stated in the
> Declarations; or
>
> (2) the difference between:
>
> (a) the total amount of compensatory
> damages . . . incurred by the
> injured person; and
>
> (b) the amount paid by or for any person
> or organization liable for the
> injured person's bodily injury.

(DE# 46-3 at 51.) The parties do not dispute that Dampier's insurer paid $100,000 for Frye's injuries. Applying these facts to Section 4(a), Auto-Owners asserts that the maximum amount payable is the lesser of: the difference between the amount paid in damages by Dampier's insurer ($100,000), and the per-person limit of its UIM coverage ($1,000,000), which is $900,000; or the difference between the amount of damages incurred by Frye (allegedly more than $1 million), and the amount paid by Dampier's insurer ($100,000), which is presumed to be more than $900,000. Because $900,000 is the smaller amount, Auto-Owners asserts that it owes Plaintiffs $900,000 under Section 4(a)(1).

Plaintiffs agree that the amount calculated under Section 4(a)(2) will exceed the amount under Section 4(a)(1), and thus, Section 4(a)(1) applies here. However, Plaintiffs argue that the $100,000 payment from Dampier's insurer should not be deducted

under Section 4(a)(1) because there has been no "amount paid . . . *to the injured person*." (*Id.* (emphasis added).) Rather, Plaintiffs assigned the $100,000 payment to the worker's compensation insurer (Auto-Owners) and their own attorneys. (*See* DE# 102 at 6 (asserting that the payment to Auto-Owners "was done through a willing agreement between the parties").) Plaintiffs claim that because the $100,000 was paid to others, and not to themselves, the clear language of Section 4(a)(1) determines that the limit for liability is $1 million.

The assignment agreement states that the limits of liability of Dampier's policy ($100,000) "have been tendered to the employee" Frye, and that Frye "has offered to assign" the amount to the employer and its worker's compensation insurer, less the 25% statutory attorney's fee of $25,000. (DE# 97-1 at 4, ¶¶ 4, 7.) The amount assigned to Auto-Owners, *i.e.,* $75,000, was accepted as partial satisfaction of the worker's compensation lien. (*Id.* ¶ 8.) Because Plaintiffs had constructive receipt of the $100,000 payment for their injuries, and willingly assigned those funds to address the worker's compensation lien and attorneys' fees, the Court finds that the $100,000 paid by Dampier's insurer is an "amount paid . . . to the injured person."

Plaintiffs argue that the language of Section 4(a)(2)(b) is ambiguous because it references "amounts paid . . . for the injured person's bodily injury," without indicating to whom the amount was

paid. The Court disagrees. As explained above, Section 4(a)(2) does not apply here, given Plaintiffs' contention that "the total amount of damages will be well in excess of the policy limits." (DE# 102 at 7.) Moreover, an insurance policy is not ambiguous simply because parties assert conflicting interpretations. *Beam,* 765 N.E.2d at 528. The language in Section 4(a) – including Section 4(a)(2)(b) – is substantially similar to the limitations on UM and UIM coverage codified in Indiana Code § 27-7-5-5(c).[2] *See* Ind. Code § 27-7-5-5(c)(2)(B). Indiana courts have held that this statutory language "is clear and unambiguous and is not open to interpretation." *Kinslow v. GEICO Ins. Co.,* 858 N.E.2d 109, 114 (Ind. Ct. App. 2006).

---

[2] Section 27-7-5-5(c) states:

> The maximum amount payable for bodily injury under uninsured or underinsured motorist coverage is the lesser of:
>     (1)  the difference between:
>         (A) the amount paid in damages to the insured by or for any person or organization who may be liable for the insured's bodily injury; and
>         (B) the per person limit of uninsured or underinsured motorist coverage provided in the insured's policy; or
>     (2)  the difference between:
>         (A) the total amount of damages incurred by the insured; and
>         (B) *the amount paid by or for any person or organization liable for the insured's bodily injury.*

Ind. Code § 27-7-5-5(c) (emphasis added).

Auto-Owners maintains that Section 4(e) of the Automobile Policy provides for a setoff of the $100,000 paid by Dampier's insurer. Section 4(e) states in part,

> [t]he amount we pay will be reduced by any amounts paid or payable for the same bodily injury . . . by or on behalf of any person or organization who may be legally responsible for the bodily injury.

(DE# 46-3 at 53.) Indiana courts have enforced setoff provisions in connection with UIM coverage. *See, e.g., Progressive Ins. Co., Inc. v. Bullock,* 841 N.E.2d 238, 241 (Ind. Ct. App. 2006) (allowing UIM insurer to set off payment by liability insurer). Because Dampier's insurer paid $100,000 for Frye's injuries, Auto-Owners asserts that its payment of $900,000 exhausts the remaining UIM coverage under the Automobile Policy.

Plaintiffs argue that under Section 4(e), Auto-Owners' $900,000 payment does not exhaust the UIM coverage because their damages allegedly exceed $1 million. Citing *Beam v. Wausau Insurance Company*, 765 N.E.2d at 530-31, they claim that Section 4(e) provides for a setoff from the total amount of damages, rather than the policy limit. In *Beam*, the policy at issue stated, "[a]ny amount payable for damages under this coverage shall be reduced by all sums paid or payable under any workers' compensation, disability benefits or similar law." 765 N.E.2d at 527. The Indiana Supreme Court found that the phrase "[a]ny amount payable for damages under this coverage" clearly provides that the

-15-

reduction will be taken from the amount of damages incurred, rather than from the policy limit. *Id*. at 530.

Auto-Owners maintains that the language of Section 4(e) differs significantly from that of the policy at issue in *Beam*. According to Auto-Owners, "the amount we pay" in Section 4(e) does not refer to Plaintiffs' damages, but rather, the amount Auto-Owners pays under the Automobile Policy. Section 4(a)(1)(a) expressly limits the amount Auto-Owners "will pay [for] damages for bodily injury" to the "Limit of Liability," subject to setoffs of amounts paid by those legally responsible for the injury. Thus, Section 4(a)(1) establishes the maximum amount Auto-Owners will pay for a UIM claim, *i.e.,* $1 million, subject to certain setoffs. According to Auto-Owners, it follows that in Paragraph 4(e), the "amount we pay" cannot exceed the UIM coverage limit of $1 million. The Court agrees. Paragraph 4(e) provides that "the amount [Auto-Owners] pay[s]" (which is, at most, the UIM coverage limit of $1 million) "will be reduced by any amounts paid or payable of the same bodily injury . . . by or on behalf of any person or organization who may be legally responsible." (DE# 46-3 at 53.) The Court finds this language to be clear and unambiguous. *See Medley v. Am. Economy Ins. Co.*, 654 N.E.2d 313, 316 (Ind. Ct. App. 1995) (holding that "[t]he limit of liability will be reduced by all sums paid because of the bodily injury . . . by or on behalf of persons or organizations who may be legally responsible" policy

-16-

language was clear and unambiguous and provided a setoff from the policy's maximum limit of liability) (emphasis omitted). Section 4(e) provides a setoff from the Automobile Policy's maximum limit of liability, rather than the amount of Plaintiffs' damages.

Plaintiffs claim that Auto-Owners is receiving a benefit twice because (1) the Automobile Policy provides for a setoff of Dampier's $100,000 payment, and (2) a portion of the payment was assigned to Auto-Owners as the worker's compensation insurer. Auto-Owners insists it only receives a benefit once, as a setoff per the terms of Section 4(a)(1). The second alleged benefit, that is, Plaintiffs' assignment of $75,000 to Auto-Owners, reduced the worker's compensation lien by $75,000. The Umbrella Policy provides for a setoff of amounts paid by the worker's compensation insurer. Auto-Owners concedes that this setoff should reflect the $75,000 reduction of the worker's compensation lien. (DE# 103 at 7, 13 n.3.) If Plaintiffs had not assigned the $75,000 to Auto-Owners, the setoff would be $75,000 greater, and Plaintiffs would receive $75,000 less under the Umbrella Policy. Under these circumstances, Auto-Owners does not receive a benefit twice.[3]

---

[3]Auto-Owners' initial memorandum in support of its Motion for Summary Judgment does not reflect a $75,000 reduction of the worker's compensation lien in its calculation of the amount owed to Plaintiffs under the Umbrella Policy. (DE# 95 at 23.) However, in its reply brief, Auto-Owners concedes that $75,000 should be reduced from the setoff amount, and recalculates the amount owed under the Umbrella Policy to reflect the $75,000 reduction. (DE# 103 at 7, 13 & n.3; *see also* DE# 101 at 9 n.5 (acknowledging

Finally, Plaintiffs assert that the Court should interpret the Automobile Policy in their favor because the policy failed to include language stating that Auto-Owners "would get a credit for underlying tort feasor [*sic*] limits even if the credit is taken by another carrier." (DE# 97 at 3.) Citing *Wagner v. Yates*, 912 N.E.2d 805 (Ind. 2009), Plaintiffs claim that where an insurer could have done more to clearly address stacking situations, failure to do so requires interpreting the policy in the insured's favor. Auto-Owners maintains that the Automobile Policy expressly addresses the situation where other UIM coverage is available. Section 5 of the policy states:

> Other [UM] or [UIM] Coverage
>
> If there is other [UM] or [UIM] Coverage which applies, we will pay our share of the damages. Our share will be the ratio of our limit of liability to the total of all limits which apply. Total damages payable for one occurrence shall be considered not to exceed the limit of liability of the applicable policy that has the highest limit of liability.

(DE# 46-3 at 52.) This language contemplates that other UIM coverage may apply to the same occurrence, and provides that coverage will not exceed the policy with the highest limit of liability. In other words, the coverage will not stack.[4]

---

$75,000 assignment reduces the worker's compensation amount Auto-Owners is entitled to set off in Auto-Owner's response brief to Plaintiffs' Motion for Partial Summary Judgment).)

[4] "'Stacking' of insurance policies occurs when more than one policy is applicable to a loss thus allowing the insured to recover under

The Indiana Supreme Court has noted that "because the purpose of insurance is to indemnify, double recovery by an insured is prohibited *even when multiple policies apply to a loss.*" *Wagner,* 912 N.E.2d at 812 (emphasis added; citation omitted). Indiana allows for anti-stacking clauses that "limit coverage when coverage under another policy is currently available so as to preclude stacking or double recovery of [UIM] coverages." *Id.* (citation and quotations omitted). Indiana Code section 27-7-5-5(a) provides that a "policy or endorsement affording [UIM] coverage . . . may provide that the total limit of all insurers' liability arising out of any one (1) accident shall not exceed the highest limits under any one (1) policy applicable to the loss. . . ." Ind. Code § 27-7-5-5(a).

In arguing that the Automobile Policy must explicitly state that a tortfeasor's payment for damages will be set off even if another insurer sets off the same payment, Plaintiffs endorse stacking UIM coverage where more than two insurers are involved. But Section 27-7-5-5(a) clearly allows for anti-stacking provisions, and does not limit the number of policies to which these provisions may apply. Section 5 of the Automobile Policy provides that UIM coverage will not be stacked, without limiting

all policies applicable to the loss (i.e., stack the policies) up to the total damages." *Fairmont Specialty Ins. Co. v. 1039012 Ontario, Inc.,* 2:10 CV 070, 2011 WL 3651333, at *7 (N.D. Ind. Aug. 19, 2011) (citation omitted).

the number of policies involved.  The Court finds that Section 5 clearly and unambiguously precludes the stacking of UIM coverage, regardless of the number of policies involved.  For these reasons, the Court finds that Auto-Owners' payment of $900,000 exhausts the remaining UIM coverage under the Automobile Policy.

## The Umbrella Policy's UIM Coverage Limit

The parties disagree as to the amount of the UIM coverage available under the Umbrella Policy.  Auto-Owners asserts that the Umbrella Policy's UIM coverage limit is $1 million because the policy's Declarations pages identify $1 million of UIM coverage. Plaintiffs argue that Indiana Code section 27-7-5-2(a) requires insurers to provide UIM coverage in limits equal to the limits of liability, unless the coverage was rejected in writing.  (DE# 97 at 5).  Plaintiffs assert that because the Umbrella Policy provides a limit of liability of $5 million, by operation of law, it must also provide UIM coverage of $5 million.[5]

In Indiana, a "statute is given its clear and plain meaning if unambiguous, but if ambiguous the court must try to ascertain the legislature's intent, and the court's primary goal is to interpret the statute to effectuate that intent."  *Miller v. LaSalle Bank Nat. Ass'n,* 595 F.3d 782, 786 (7th Cir. 2010)

---

[5] Neither party asserts that Tri City rejected UIM coverage.

(citations omitted). Because Indiana's "UIM statute 'is a mandatory, full-recovery, remedial statute,' it 'is to be liberally construed' and 'read in a light most favorable to the insured.'" *Lakes v. Grange Mut. Cas. Co.,* 964 N.E.2d 796, 804 (Ind. 2012) (quoting *DePrizio,* 705 N.E.2d at 460).

When the Umbrella Policy was first issued in 2007, Section 27-7-5-2(a) stated in part:

> (a) The insurer shall make available, in each automobile liability or motor vehicle liability policy of insurance which is delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property to others arising from the ownership, maintenance, or use of a motor vehicle, or in a supplement to such a policy, [UM and UIM coverage].

> *The [UM] and [UIM] coverages must be provided by insurers . . . in limits at least equal to the limits of liability specified in the bodily injury liability provisions of an insured's policy,* unless such coverages have been rejected in writing by the insured. . . .

Ind. Code § 27-7-5-2(a) (2007) (emphasis added) ("subsection (a)"). At that time, Section 27-7-5-2 applied to commercial umbrella policies. *United Nat. Ins. Co. v. DePrizio*, 705 N.E.2d 455, 463 (Ind. 1999) (noting that "[a]bsent an express directive from our legislature, we decline the invitation to carve out an exemption for particular policies"). In 2009, the Indiana legislature amended Section 27-7-5-2 to add subsection (d), which exempted commercial umbrella policies from subsection (a):

> *(d)  An insurer is not required to make available the coverage described in subsection (a) in a commercial umbrella or excess liability policy*, including a commercial umbrella or excess liability policy that is issued or delivered to a motor carrier (as defined in IC 8-2.1-17-10) that is in compliance with the minimum levels of financial responsibility set forth in 49 CFR Part 387.

Ind. Code § 27-7-5-2(d) (2009) (emphasis added) ("subsection (d)").  Subsection (a) was also amended to begin with the phrase, "*[e]xcept as provided in subsection (d),* the insurer shall make available, in each automobile liability or motor vehicle policy of insurance," UM and UIM coverage.  Ind. Code § 27-7-5-2(a) (2009) (emphasis added) (together with subsection (d), the "2009 Amendment").  The parties disagree as to whether the 2009 Amendment applies to the Umbrella Policy.

Plaintiffs assert that the 2009 Amendment does not apply because the Umbrella Policy was first issued in 2007, two years before the 2009 Amendment.  Auto-Owners insists that the 2009 Amendment applies because the Umbrella Policy was renewed after the 2009 Amendment's effective date of July 1, 2009.  *See* Ind. Code § 27-7-5-2 (2009).[6]  The question is whether the Indiana legislature intended the 2009 Amendment to apply to renewals.

---

[6] The Umbrella Policy was issued in 2007 with a UIM coverage limit of $1 million and a liability coverage limit of $1 million, and was renewed at these coverage limits several times.  The Umbrella Policy's liability coverage limit was increased to $5 million, while maintaining the $1 million of UIM coverage, in an endorsement effective May 5, 2010.  On November 9, 2010, the Umbrella Policy was renewed at these new limits.  Thus, the endorsement and renewal

Looking at the plain language of the statute, Section 27-7-5-2 applies to automobile liability policies "delivered or issued for delivery" in Indiana. Ind. Code § 27-7-5-2(a). Renewal policies are policies delivered or issued for delivery. *See* Ind. Code § 27-7-6-3 (2009) (defining renewals as the "*issuance and delivery* by an insurer of a policy replacing at the end of the policy period a policy previously issued and delivered by the same insurer insuring the same insured . . . .") (emphasis added). Nothing in the language of Section 27-7-5-2 indicates that the 2009 Amendment does not apply to renewals.

In determining whether an amendment to Section 27-7-5-2 applies to renewals, Indiana courts have relied upon the amendment's legislative notes. In *United Farm Bureau Mutual Insurance Company v. Lowe*, 583 N.E.2d 164 (Ind. Ct. App. 1991), the court considered whether an amendment to Section 27-7-5-2 in 1987 ("1987 amendment") applied to policies issued before, and renewed after, the amendment's effective date.[7] There, the plaintiffs maintained that the 1987 amendment should apply to the renewal policies, thereby providing them with additional insurance

---

of the Umbrella Policy occurred after the 2009 Amendment went into effect.

[7] The 1987 amendment to Section 27-7-5-2 required that "insurers provide underinsured coverage, in addition to the uninsured coverage, in amounts equal to the insured's own bodily injury limits in the insured's policy, unless the insured has rejected the coverages in writing." *Lowe*, 583 N.E.2d at 167.

coverage. The court reviewed the historical notes of the 1987 amendment and found that "the legislature included a special section so that the amended statute applies *only to policies first issued* after December 31, 1987." *Id*. at 167-68 (citing P.L. 391-1987(ss), Sec. 4) (emphasis added). Relying on those notes, the court held that the Indiana legislature intended for the 1987 amendment to apply only to policies first issued after December 31, 1987. *Id*. at 168. Because the plaintiffs' renewal policies were not "policies first issued" after December 31, 1987, they were not subject to the amendment. *Id.; see also Millikan v. U.S. Fidelity and Guar. Co*., 619 N.E.2d 948, 950 (Ind. Ct. App. 1993) (holding that the 1987 amendment to section 27-7-5-2 "applies to policies 'first issued' after December 31, 1987") (citing P.L. 391-1987(ss), Sec. 4).

When the Indiana legislature enacted the 2009 Amendment of Section 27-7-5-2, it included notes to the amendment. *See* P.L. 124-2009, Sec. 1-3. Unlike the 1987 amendment of Section 27-7-5-2, the notes to the 2009 Amendment do not direct that the 2009 Amendment apply only to policies first issued after the amendment's effective date. Because the legislature did not limit the application of the 2009 Amendment to policies first issued after the amendment's effective date, the Court finds that the Umbrella Policy is subject to the 2009 Amendment of Section 27-7-5-2.

Plaintiffs also argue that, even if the Umbrella Policy is subject to the 2009 Amendment of Section 27-7-5-2, an insurer that provides UIM coverage in an umbrella policy must comply with subsection (a)'s requirement that such coverage be provided "in limits at least equal" to the bodily injury liability coverage limits.  They assert that subsection (d) only states that umbrella policies are not required to provide UIM coverage; if an insurer chooses to provide UIM coverage, nothing in Section 27-7-5-2 allows the insurer to determine the amount of UIM coverage provided.

Plaintiffs claim that Section 27-7-5-2 did not allow umbrella policies to provide UIM coverage in amounts that differ from bodily injury liability coverage limits until years after the accident at issue.  In 2013, Section 27-7-5-2 was amended to include subsection (h), which allows personal umbrella insurers to determine the amount of excess UIM coverage it will provide ("2013 amendment").  Subsection (h) states in part:

> an insurer that makes available the coverage described in subsection (2) under a personal umbrella or excess liability policy:  (A) may make available the coverage in limits determined by the insurer; and (B) is not required to make available the coverage in limits equal to the limits specified in the personal umbrella or excess liability policy.

Ind. Code § 27-7-5-2(h).  Plaintiffs argue that the addition of this language indicates that Section 27-7-5-2 did not allow insurers to determine the amount of umbrella UIM coverage to provide prior to the 2013 amendment.  However, subsection (h)

addresses *personal* umbrella policies, rather than *commercial*
umbrella policies. Plaintiffs point to no evidence that the 2013
amendment changed Section 27-7-5-2 as it relates to commercial
umbrella policies. Furthermore, neither the 2009 Amendment to
Section 27-7-5-2 nor the notes to the 2009 Amendment indicates
that the legislature intended to require an insurer to abide by
the obligations of subsection (a) if it elects to provide UIM
coverage in a commercial umbrella policy. Rather, Section 27-7-
5-2(d) and the language added to subsection (a) in the 2009
Amendment clearly and unambiguously provide that commercial
umbrella insurers are not required to make available UIM coverage
under the requirements set forth in subsection (a).

When the liability limit of the Umbrella Policy increased to
$5 million in May 2010, and the policy was renewed in November
2010, Section 27-7-5-2 no longer required commercial umbrella
policies to make available the insurance coverage required in
subsection (a), *i.e.*, UIM coverage with limits that were at least
equal to liability limits. As such, the Court finds that the UIM
coverage limit under the Umbrella Policy is the amount provided on
its Declarations pages: $1 million.

<u>The Umbrella Policy's Setoff of Worker's Compensation Amounts</u>

Plaintiffs argue that setting off amounts paid by a worker's
compensation insurer from the UIM coverage limit of the Umbrella
Policy is against public policy. They claim that because Section

-26-

27-7-5-2 allegedly gives an insured a "statutory right to purchase [UIM] coverage in an amount equal to the limits of liability he purchased," allowing a setoff of worker's compensation amounts diminishes this statutory right. (DE# 97 at 7.) But this argument assumes that the Umbrella Policy is not subject to the 2009 Amendment of Section 27-7-5-2. As explained above, the Court finds that the Umbrella Policy is subject to the 2009 Amendment of Section 27-7-5-2. Because the 2009 Amendment explicitly excludes commercial umbrella policies from the requirements of Section 27-7-5-2(a), this argument fails.[8]

Auto-Owners asserts that the Umbrella Policy allows a setoff of worker's compensation amounts from the UIM coverage limit. Auto-Owners relies upon Section 4(b)(1)(c) of the Umbrella Policy, which states, "[f]or [UIM] coverage, our Limit of Liability shall be reduced by any amounts . . . [p]aid or payable for the same bodily injury covered under any workers compensation or similar law . . . which are in excess of the retained limit." (DE# 46-4 at 33.) The Indiana Supreme Court has found that similar policy language allowed a setoff of worker's compensation benefits from the policy's coverage limits. In *Justice v. American Family Mutual*

---

[8] Plaintiffs also assert that Auto-Owners relies upon section (e) of the Automobile Policy as the basis for the worker's compensation setoff. (DE# 97 at 6 (citing DE# 46-3).) Because Auto-Owners does not rely upon this provision of the Automobile Policy in its briefing, the Court will not address it here.

*Insurance Company*, 4 N.E.3d 1171 (Ind. 2014), the Indiana Supreme Court found the following policy language to be unambiguous: "[t]he limits of coverage will be reduced by . . . [a] payment made or amount payable because of bodily injury under any worker's compensation or disability benefits law or any similar law." *Id*. at 1177. The Court held that this language meant that the setoff was applied to the limits of the policy, rather than the insured's damages. *Id*.[9]

Plaintiffs contend that any setoff of worker's compensation amounts should be deducted from the amount of their damages, rather than the Umbrella Policy's limit of liability. They attempt to distinguish Section 4(b)(1)(c) from the provision approved in *Justice* by focusing on Section 4(b)(1)(c)'s phrase, "which are in excess of the retained limit." According to Plaintiffs, this

---

[9] In *Justice*, after determining that the setoff provision was unambiguous, the Court considered whether the provision was unenforceable as a violation of public policy. There, the UIM coverage limit was $50,000, which was the minimum amount allowed by statute in Indiana. 4 N.E.3d at 1178-79. Justice had received $25,000 from the tortfeasor's carrier, and over $70,000 in worker's compensation. Applying the setoff provision to the worker's compensation amount operated to reduce the UIM coverage to zero. *Id*. at 1197. The Court found that Justice was entitled to recover an additional $25,000 from the UIM insurer in order to receive the statutory minimum of $50,000 of UIM coverage. *Id*. This is not an issue here because Plaintiffs received more than the statutory minimum of $50,000 from the Dampier's insurer. *See Hardiman v. Gov't Interins. Exch.*, 588 N.E.2d 1331, 1335 (Ind. Ct. App. 1992) (allowing setoff of full amount of worker's compensation payment against UIM limit where employee received the statutory minimum from the tortfeasor's insurer).

phrase – which is not found in the *Justice* provision - means that the Umbrella Policy's limit of liability is only reduced for payments that exceed the "retained limit" of $1 million. Because the worker's compensation amount is less than the retained limit of $1 million, Plaintiffs argue that the worker's compensation amount is not set off from the limit of liability.

Auto-Owners responds that the amounts paid "which are in excess of the retained limit" means the amounts paid that are above and beyond the coverage limit of the underlying Automobile Policy. The Court agrees. The Umbrella Policy defines the "retained limit" as "the greater of: (a) [t]he highest applicable limits of liability of any and all underlying policy(ies); or (b) 1) $500,000 for bodily injury. . . ." (DE# 46-4 at 31.) In their briefs, the parties agree that the "retained limit" is the $1 million UIM coverage limit under the underlying Automobile Policy. (DE# 102 at 17-18; DE# 103 at 12.) The Court finds that this language to be clear and unambiguous, and that the language of Section 4(b)(1)(c) is substantially similar to the provision the *Justice* Court found to be unambiguous.

Here, the worker's compensation amounts were not part of the "retained limit" nor were they set off from the amounts paid under the Automobile Policy. Thus, they are "amounts paid . . . in excess of the retained limits." Because the $1 million limit was reached under the Automobile Policy ($100,000 from Dampier's

insurer, and $900,000 from Auto-Owners), Section 4(b)(1)(c) allows a setoff of the worker's compensation amounts from the Umbrella Policy's UIM coverage limit of $1 million. The Court therefore holds that Auto-Owners is entitled to set off the amounts paid by the worker's compensation insurer from the UIM coverage limits of the Umbrella Policy.

At this time, it is unclear whether Auto-Owners has paid Plaintiffs the amount it acknowledges Plaintiffs are owed under the Umbrella Policy. Auto-Owners concedes that Plaintiffs' assignment of $75,000 to Auto-Owners reduced the worker's compensation lien to $617,685.79, and that, after setting off worker's compensation amounts, Plaintiffs are entitled to $382,314.21 under the Umbrella Policy. (DE# 103 at 13 & n.3.) Auto-Owners claims that it has paid Plaintiffs $288,799.60, and is in the process of paying them $18,304.61, for a total of $307,104.21. (DE# 95-1 at 3, DE# 95 at 23.) Auto-Owners does not indicate whether it has paid Plaintiffs the remaining balance owed under the Umbrella Policy. The Court therefore **ORDERS** Auto-Owners to submit evidence sufficient to show that it is has paid the full amount it concedes it owes to Plaintiffs under the Umbrella Policy ($382,314.21) within thirty (30) days of the date of this Order.

<u>Certification of Questions to the Indiana Supreme Court</u>

Plaintiffs seek to certify three questions to the Indiana Supreme Court, which are paraphrased as follows:

> (1) Where a UIM insurer is entitled to set off a tortfeasor's liability limit, is a second UIM insurer entitled to benefit from the same setoff, without violating Indiana law and policy;

> (2) Where an umbrella UIM policy was issued in 2007, and was renewed thereafter, and where the version of Section 27-7-5-2 in effect in 2007 required that UIM limits match liability limits, does a subsequent amendment to Section 27-7-5-2, which took effect on July 1, 2009, and excludes commercial umbrella policies from the requirement of matching limits, apply to the policy; and

> (3) Is a policy provision allowing for a setoff against limits for payments of worker's compensation unenforceable in light of the Indiana Supreme Court's holdings in *Justice* and *DePrizio*.

(*See* DE# 92 at 3-4.) Federal courts may "certify a question of Indiana law to the Supreme Court when it appears to the federal court that a proceeding presents an issue of state law that is determinative of the case and on which there is no clear controlling Indiana precedent." Ind. R. App. P. 64(A). The decision to grant or deny a motion to certify a question of state law is discretionary with the district court. *United Farm Bureau Mut. Ins. Co., Inc. v. Metro. Human Rel. Comm'n,* 24 F.3d 1008, 1015, n.4 (7th Cir. 2001).

The most important consideration guiding the exercise of discretion to certify is whether the court is "genuinely uncertain"

about a question of state law that is critical to resolution of the case. *Golden v. State Farm Mut. Auto. Ins. Co.,* 745 F.3d 252, 257 (7th Cir. 2014) (citation omitted). This Court is not "genuinely uncertain" about the issues presented. While there is no directly controlling precedent in Indiana on these issues, there is sufficient precedent from which this Court can determine how the Indiana courts would decide them. The Court therefore **DENIES** Plaintiffs' motion to certify these questions of Indiana law to the Indiana Supreme Court.

CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Certification (DE# 92) is **DENIED.** Defendant Auto-Owners' Motion for Summary Judgment (DE# 94) is **GRANTED.** Plaintiffs' Motion for Partial Summary Judgment (DE# 96) is **DENIED.** The Defendant is **ORDERED** to submit evidence that it has paid the full amount it concedes it owes to Plaintiffs under the Commercial Umbrella Insurance Policy ($382,314.21) within thirty (30) days of the date of this Order. When the Court is satisfied that Auto-Owners has paid this amount to Plaintiffs, it will dismiss this case.

**DATED: January 19, 2016**     **/s/ RUDY LOZANO, Judge**
                         **United States District Court**